IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

| | |
|---|---|
| **MARGARET R. LEWIS-BILAS,** | ) <br> ) <br> ) |
| **Plaintiff,** | ) <br> ) <br> ) |
| v. | )    CASE NO: <br> ) <br> ) |
| **THE DIOCESE OF ST. AUGUSTINE, INC.** | ) <br> ) <br> ) |
| **Defendant.** | ) <br> )    **PLAINTIFF DEMANDS A** <br> )    **TRIAL BY JURY** <br> ) |

### PLAINTIFF'S ORIGINAL COMPLAINT

Plaintiff, Margaret R. Lewis-Bilas, ("Plaintiff"), by and through undersigned counsel, files this Original Complaint against Defendant, The Diocese of St. Augustine, Inc., a Florida Corporation, and states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for (i) interference and (ii) retaliation under the Family and Medical Leave Act of 1993 ("FMLA"), 29 U.S.C. § 2601 *et seq* 29 U.S.C. § 201 *et seq.*, to redress Defendant's employment practices against Plaintiff, including her unlawful termination, and seeks damages and equitable relief to include, lost wages or salary, lost employment benefits, liquidated damages, front pay, attorneys' fees and costs and expert witness fees and costs.

## JURISDICTION AND VENUE

2. Jurisdiction is conferred upon this Court pursuant to 28 U.S.C. §§ 1331 and 1343 as this action involves a federal question under the FMLA.

3. Under 28 U.S.C. §1391(b), venue is appropriate here in the Jacksonville Division of the Middle District of Florida because a substantial part of the events or omissions giving rise to this action occurred within the Jacksonville Division.

## PARTIES

4. Plaintiff is and was at all material times relevant to this action a resident of the State of Florida and an employee of Defendant, eligible for FMLA leave.

5. Defendant is a corporation duly organized and existing under the laws of the State of Florida with its principal office and place of business in Jacksonville, Florida.

6. At all material times relevant to this action, Defendant was an employer covered by the FMLA as defined by 29 U.S.C. § 2611(4)(A).

## STATEMENT OF FACTS

### A. Plaintiff's Hiring and Title Determination for Part-Time Positions

7. In January 2016, Plaintiff was hired by Reverend Michael Houle ("Houle") to an unnamed position at the St. Peter's Mission located in the East Arlington part of Jacksonville for 20 hours a week, as well as Youth Minister for St. Paul's Catholic Church located in Jacksonville Beach for 10 hours a week.

8. Plaintiff's St. Peter's position was initially unnamed due to it being a new role at St. Peter's. However, when interviewing for the position, Houle told Plaintiff that St. Peter's was then "acting as a drive-through communion service", with "no connection among the congregation" and that he needed her to be the "eyes and ears at the Mission" and "the fields

were ripe for harvest." No job description, or other list of responsibilities or expectations for Plaintiff's position at the Mission was ever provided to Plaintiff.

9. During the initial weeks, various names were considered for her title, including Pastoral Associate and Pastoral Minister.

### B. Plaintiff's Success, Promotion to Full-Time Position, and Duties

10. Plaintiff was quickly successful in bringing organization and building a connected congregation and, after about 6 months, was asked to work full time as Pastoral Minister at St. Peter's. Records starting in early 2016 through March of 2020 show a consistent and marked growth in Mission membership, donations, and volunteer participation. Indeed, the initial mortgage for Mission construction in 2008 was paid off in full within 18 months of Plaintiff's hiring.

11. Upon her full-time status, Plaintiff routinely worked 6 -7 days a week, which included taking calls or visiting with Mission members at all hours of day and night.

12. Despite her title being Pastoral Minister, Plaintiff's job grew essentially into a caretaker and congregation growth coordinator role for St. Peter's. Specifically, she opened and closed the Mission for masses, weddings, baptisms, funerals and other events, set up and took down tables and chairs, ran the sound and AV equipment, set up altar linens, candles, service books, maintained the Mission's plants and seasonal decorations, flowers, and banners, changed the Divine Presence Candle, service missalettes and song books, washed and ironed at her home the Mass linens, clothes, towels, as well as the priest and altar server garments, and took clergy robes to, and picked up from, dry cleaning. Plaintiff would also routinely vacuum the Mission, clean its kitchen and bathrooms, take out the trash and other housekeeping duties. She would attend meetings of St. Paul's Leadership Team and Parish Council and reported on St. Peter's

growing congregation and various events. She created, from scratch, St. Peter's membership data base and communicated to the membership about St. Peter's events. She also coordinated with many of the Mission's various vendors, including repair persons, exterminators, sound and audio visual technicians, inspectors, computer repair personnel and internet providers. Internally, she further coordinated volunteers, including event or service singers, musicians, lay ministers, lectors, servers and ushers. On Mondays, by 8:30 a.m., she would deliver the weekends' offerings to the St. Paul's Business Manager when called upon to do so.

13. Although a life-long Catholic, Plaintiff has no formal ecclesiastical education or training. Her post-high school education consists of earning collegiate credit hours from Miami-Dade Community College, the University of Miami School of Music, and Saint Xavier University, at all three in music and vocal studies.

14. At no time has Plaintiff ever claimed any special housing allowance on her taxes, which is available only to employees earning their compensation in the exercise of the ministry.

      C. **Plaintiff's Serious Health Condition - Chronic Heart Disease Together With Respiratory, Orthopedic and Pain Management Issues**

15. During her employment with Defendant, Plaintiff was diagnosed with chronic heart disease. Several times she was hospitalized and has been under the continuing care and treatment of her family physician, cardiologist and pulmonologist. Indeed, in 2017, Plaintiff was taken from St. Peter's via ambulance as attending paramedics believed Plaintiff was experiencing a heart attack. Then, in October 2019, Plaintiff was hospitalized for two days related to heart and lung complications.

16. Other manifestations of her episodic bouts with her heart disease presented as difficulty in breathing, which limited her ability walk and sing. One quite memorable example occured one Sunday during church. Plaintiff had extreme difficulty breathing, chest discomfort

and broke out into a sweat.  A retired registered nurse who was a member of the congregation noticed the Plaintiff's distress and strongly suggested Plaintiff immediately call for emergency assistance or go to the emergency room.  While at church the nurse mentioned sat with her, constantly checked Plaintiff's vitals, and forced Plaintiff to rest.  Thereafter, for several days, the nurse continued to check on Plaintiff.

17. Additionally, in February 2018 Plaintiff underwent full replacement of her right knee, and was under the continuing care and treatment of her family physician, two orthopedists, and pain management specialist.  Defendant was aware of Plaintiff's both serious health conditions, as she shared these medical issues with Houle both in regular personal discussions and via numerous emails throughout her employment.

18. In June 2020, Plaintiff informed Houle that she needed time off to catch up with everything her doctors had been advising.  Houle told her to take off the time she needed, and to take advantage of FMLA and short-term disability if necessary.   At this time, Plaintiff took a day or two off here and there for doctors' appointments.  During this time, Plaintiff was further informed that due to the pain medication she had taken for three years to manage her back and knee pain, her teeth had been badly impacted and she would require surgery to remove all her teeth.

19. Beginning in July 2020, Plaintiff began attempting to contact the Diocese's HR department seeking guidance on the procedures for FMLA leave.  Plaintiff repeatedly tried calling the Diocesan HR department from St. Peter's Mission office and her personal phone.  Plaintiff called and e-mailed each member of the Diocese's HR department listed on their website page, including well into August, 2020.  Every call went directly to voice mail, and none of her calls or e-mails were returned or answered.

### C. Defendant Begins Termination of Plaintiff

20. On September 11, 2020, Plaintiff received an e-mail from Houle stating that the St. Peters' Mission was being closed and that her employment would likely be terminated. Although Plaintiff was a part of the wider St. Paul's Church administration staff, and with seniority and broader administrative experience and background to many of the other staff, no mention was given as to why she had alone been selected for termination.

21. Ms. Bilas replied to Houle's e-mail stating she did not want to resign and requested an in-person meeting with Houle. Houle declined. Instead, Houle merely pitched the task to Missy Rindge, a Diocesan Senior HR Generalist, requesting that she send Ms. Bilas an exit interview form, which is only provided to employees being terminated.

22. Following the protocol outlined in the Defendant's Employee Handbook, on September 14, 2020 Ms. Bilas called and e-mailed Bishop Felipe J. Estévez, requesting an in person meeting with him. Instead of a reply from the Bishop, or his assistant, on September 16, Ms. Bilas received a call from Tina Nugent, another Diocese Senior HR Generalist, who immediately began the call by demanding, "Bishop wants to know what you want from him?!" Without even waiting for an answer, the next words from Ms. Nugent were, "The Bishop wants to know why you destroyed the security cameras and computer at the Mission?!" Ms. Bilas had no idea what Ms. Nugent was talking about and was shocked that Ms. Nugent was suggesting Bishop Estevez was accusing her of damaging or crippling Church property. Next, Ms. Nugent continued, again, using an antagonistic tone, "why haven't you been in to work at St. Peter's since March and why did you turn down the job offer at St. Paul's"? Again, Ms. Bilas had no idea what Ms. Nugent was talking about and asked, "what job offer?" Ms. Bilas suggested Ms.

Nugent check with Paycor, an outside company the Diocese contracts with for all employee payroll as evidence that she had worked up through September 11. Ms. Nugent simply did not answer.

### D. Detailed and Honest Exit Interview Answers

23. The Diocese's HR Department had no difficulty contacting Ms. Bilas when it came to working toward her possible termination from the Diocese. Ms. Rindge very promptly sent Ms. Bilas the Diocese's Exit Interview Questionnaire. On September 18, Ms. Bilas submitted her answers to the Questionnaire. Her answers included how she was had been mistreated by Houle and one of his administrative staff, and how Plaintiff's numerous calls and e-mails to HR about FMLA leave and other matters were ignored.

24. After receiving Plaintiff's exit interview answers, Ms. Nugent contacted Plaintiff to set up an in-person meeting in the Plaintiff's home. Plaintiff's husband, Anthony Bilas, Jr. attended the meeting with Ms. Nugent and Plaintiff. Having been led to believe the meeting was to discuss alternatives to termination, Plaintiff was shocked that Ms. Nugent primarily came prepared to grill her about the "latent hostility" Ms. Bilas experienced from Houle and St. Paul's Director of Faith Formation, as detailed in Plaintiff's exit interview questionnaire.

25. During the meeting, Plaintiff repeatedly attempted to inquire about the initial complaints Ms. Nugent had relayed in Nugent's call to Ms. Bilas on September 16th regarding destruction of parish property and theft of services. Those questions however were apparently not what Ms. Nugent cared to discuss, and were ignored and remained unanswered.

26. While Plaintiff's employment termination was becoming more evident, Ms. Nugent also knew about Plaintiff's medical conditions. Indeed, Ms. Nugent suggested that Plaintiff take FMLA leave for 12 weeks, using accumulated sick and vacation time to get paid

and for Plaintiff to file for short term disability ("STD"). Plaintiff was receptive to Ms. Nugent's suggestion and responded that, if another position was not possible, would the FMLA/STD allow Plaintiff to remain employed until March 1, 2021 when Plaintiff would turn 62 and could qualify for social security retirement benefits? Ms. Nugent replied that "there ought to be a way to use benefits to accomplish that" and that she would have Ms. Rindge reach out to Ms. Bilas with the requisite FMLA and STD paperwork

27. However, neither Ms. Rindge, nor anyone else on behalf of Defendant, ever reached out, and Ms. Bilas never received any FMLA or STD paperwork.

### E. Defendant Completes Plaintiff's Termination Without FMLA

28. On September 29, 2020, Plaintiff received a letter from Houle terminating her employment effective that day. Noticeably absent from his letter was any mention of Plaintiff's prior discussions with Houle about FMLA, or her requests for FMLA leave made to Defendant's HR department.

### COUNT I

**(Violation of the Family and Medical Leave Act, 29 U.S.C. §2615-Interference)**

29. Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 through 28 of this Complaint.

30. Defendant engaged in commerce or other industry or activity affecting commerce and employed fifty (50) or more employees for each worker day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year.

31. Defendant is an employer under the Family and Medical Leave Act ("FMLA").

32. Plaintiff was an eligible employee under the FMLA to receive twelve work weeks of leave during any twelve-month period because her serious health conditions.

33. Beginning in June 2020, Plaintiff requested time off from her supervisor, Houle, to attend to her serious medical conditions, including cardiac issues.

34. In August 2020, Plaintiff further attempted to exercise her rights under FMLA by notifying Defendant's HR Department of her need to take FMLA leave to tend to her serious medical condition.

35. Defendant's decision to terminate Plaintiff's employment after it had been notified of Plaintiff's serious medical condition interfered with Plaintiff's statutory rights under the FMLA.

36. Defendant further interfered with Ms. Bilas' rights pursuant to the FMLA, by failing to provide her with any response or FMLA forms following her request for FMLA leave and after Ms. Nugent's assurance that FMLA leave was available.

37. Defendant's actions were in violation of 29 U.S.C. §2615 and applicable federal regulations.

38. Defendant's violations of 29 U.S.C. §2615 were willful and committed in bad faith without reasonable grounds.

39. As a direct and proximate result of actions by Defendant, by and through its employees and agents, Plaintiff has suffered and continues to suffer damages including lost back pay, lost front pay, lost benefits and entitlements, and other compensation denied or lost as a result of Defendant's actions.

WHEREFORE, Plaintiff Margaret R. Lewis-Bilas, respectfully requests the Court to enter judgment against Defendant and in favor of Plaintiff, granting damages for lost back pay, lost front pay, lost benefits and entitlements, liquidated damages equal to the sum of the amount of actual damages and interest pursuant to 29 U.S.C. §2617 (a)(1)(A), attorney's fees and costs,

pre-judgment and post-judgment interest, and granting such further relief as this Court deems just and proper.

## COUNT II

**(Violation of the Family and Medical Leave Act, 29 U.S.C. §2615-Retaliation)**

40. Plaintiff restates and realleges each and every factual allegation contained in paragraphs 1 through 28 of this Complaint with the same force and vigor as if set out here in full.

41. Defendant engaged in commerce or other industry or activity affecting commerce and employed fifty (50) or more employees for each worker day during each of the twenty (20) or more calendar work weeks in the current or preceding calendar year. Defendant is an employer under the Family and Medical leave Act ("FMLA").

42. Defendant is an employer under the Family and Medical leave Act ("FMLA").

43. Plaintiff was an eligible employee under the FMLA to receive twelve work weeks of leave during any twelve-month period because of her serious health conditions.

44. Beginning in June 2020, Plaintiff requested time off from her supervisor, Houle, to attend to her chronic health conditions, including her heart disease.

45. In August 2020, Plaintiff further attempted to exercise her rights under FMLA by notifying Defendant's HR Department of her need to take FMLA leave to tend to her serious medical conditions.

46. Defendant's decision to ignore Plaintiff's FMLA request and then terminating Plaintiff's employment constitutes unlawful retaliation and violated Plaintiff's statutory rights under the FMLA.

47. Defendant's actions were in violation of 29 U.S.C. §2615 and applicable federal regulations.

48. Defendant's violations of 29 U.S.C. §2615 were willful and committed in bad faith without reasonable grounds.

49. As a direct and proximate result of actions by Defendant, by and through its employees and agents, Plaintiff has suffered and continues to suffer damages including lost back pay, lost front pay, lost benefits and entitlements, and other compensation denied or lost as a result of Defendant's actions.

WHEREFORE, Plaintiff Margaret R. Lewis-Bilas, respectfully requests the Court to enter judgment against Defendant and in favor of Plaintiff, granting damages for lost back pay, lost front pay, lost benefits and entitlements, liquidated damages equal to the sum of the amount of actual damages and interest pursuant to 29 U.S.C. §2617 (a)(1)(A)(iii), attorney's fees and costs pursuant to 29 U.S.C. §2617 (a)(3), pre-judgment and post-judgment interest, and granting such further relief as this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, Margaret R. Lewis-Bilas hereby demands a jury trial on all claims set forth in the Complaint.

Dated this 24th day of September, 2021.

                                                     Respectfully submitted,

                                                     /s/ Gregg Gerlach, Esq.
                                                     Gregg Gerlach Esq.
                                                     FL Bar No. 338140
                                                     Gerlach Employment Law, PL
                                                     6320 St. Augustine Road, Suite 7B
                                                     Jacksonville, FL 32217
                                                     Telephone:  904.296.7000
                                                     Facsimile:   904.250.5654
                                                     2g@gerlachemploymentlaw.com

Secondary Emails:
Jeffrey@gerlachemploymentlaw.com
**ATTORNEYS FOR PLAINTIFF,**
**MARGARET R. LEWIS-BILAS**

Secondary Emails:
Jeffrey@gerlachemploymentlaw.com
**ATTORNEYS FOR PLAINTIFF,**
**MARGARET R. LEWIS-BILAS**